

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00295-CR

_____

BYRON JACK RICKARD, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. 61,604-A

_____

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

## I.  INTRODUCTION

A jury found Appellant Byron Jack Rickard guilty of capital murder. *See* Tex. Penal Code Ann. § 19.03. Because the State did not seek the death penalty, the trial court sentenced Rickard to life in prison without the possibility of parole. *See id.* § 12.31(a).

On appeal, in one point, Rickard argues that the trial court abused its discretion by denying two of his challenges for cause during voir dire. Because Rickard has not met his burden of showing that the venire members could not follow the law, we hold that the trial court did not abuse its discretion and affirm the trial court's judgment.

## II.  BACKGROUND

Because Rickard does not challenge the sufficiency of the evidence, we provide only a summary of the offense.

The evidence showed that someone had struck ninety-one-year-old Ruby Ditto in the head with a blunt object—most likely a hammer—at least seven times and killed her. Rickard had been working with Ditto the day that she was murdered,[1] so the police, who knew where Rickard resided, went to his residence.

---

[1]Ditto owned rental property. Rickard was helping her that morning remove items from a house and placing them in the back of her pickup. A witness saw Ditto cleaning the passenger side of her pickup and later saw Rickard on the driver's side. The witness later heard the pickup drive off.

The police found Rickard standing outside his home. Parked down the street from Rickard's house, the police found Ditto's pickup. Rickard indicated that Ditto had given him permission to drive it. Other testimony, however, showed that Ditto never let anyone else drive her pickup.

Inside the pickup, the police found Ditto's fanny pack—which had been rifled through—her cell phone, and a hammer. One of Ditto's friends testified that Ditto kept her cash, her credit cards, and her keys in the fanny pack and that she never took her fanny pack off.

The pickup provided additional evidence. The police found blood spatter on the upright portion of the driver's seat, the interior panel of the driver's door, the center of the steering wheel, and possibly on the driver's seat. On the pickup's exterior, the police also found blood on the passenger side behind the passenger door on the front corner of the truck bed.

After hearing this evidence, the jury found that Rickard had intentionally caused Ditto's death by striking her on or about the body, head, or neck with a hammer or an unknown object while he was in the course of robbing or attempting to rob her. *See id.* § 19.03(a)(2).

### III.  LEGAL PRINCIPLES

Rickard's point complains about the trial court's denials of his challenges for cause. First, we address challenges for cause. Next, we address our standard of review when addressing denials of challenges for cause.

## A. Challenges for cause

Venire members are challengeable for cause if they have a bias or prejudice against

- the defendant or

- the law on which the State or the defendant is entitled to rely.

*Hudson v. State*, 620 S.W.3d 726, 731 (Tex. Crim. App. 2021). The test is whether the bias or prejudice would substantially impair the prospective jurors' ability to carry out their oath and to follow instructions in accordance with the law. *Id.* Before potential jurors may be excused on this basis, the law must be explained to them, and they must be asked whether they can follow the law regardless of their personal views. *Id.* The challenger bears the burden of showing that the challenge is proper. *Id.* The challenger does not meet this burden until he has shown that the venire members understood the law's requirements and could not overcome their prejudice well enough to follow the law. *Id.*

## B. Standard of review

When a trial court denies a challenge for cause, we look to the entire record to determine whether sufficient evidence exists to support its ruling. *Id.* Because the trial court is in the best position to evaluate a venire member's demeanor and responses, we review its challenge-for-cause rulings with considerable deference. *Id.* Only for a clear abuse of discretion will we reverse. *Id.*

## IV.  DISCUSSION

Rickard challenged venire members Ms. D. and Mr. L. for cause.[2] The trial court denied both challenges. We address each challenge separately.

## A.  Ms. D.

Rickard contends that the trial court erred by denying his challenge to strike venire member Ms. D. for cause because she could not follow the law. Specifically, he contends that she stated that she would convict him of capital murder even if the murder was not committed during the robbery.

After reviewing the record, however, we conclude that Rickard had misstated the law in voir dire. To constitute capital murder, the murder *can* occur during the robbery, but it does not necessarily have to occur during the robbery. Rickard confused "in the course of" with—as he expressed it—"during in the course of," by which, contextually, he appeared to have meant "during." We explain below.

In the context of this case, a person commits capital murder if the person commits murder "in the course of" committing or attempting to commit a robbery. *See* Tex. Penal Code Ann. § 19.03(a)(2). The key language is not "during" and not "during in the course of." The key language is "in the course of"—the language used in the statute. Case law has defined what "in the course of" is and what it is not.

---

[2]We use initials to protect the venire members' identities.

The Texas Court of Criminal Appeals has defined "in the course of committing" an offense as conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense.[3] *Griffin v. State*, 491 S.W.3d 771, 774–75 (Tex. Crim. App. 2016); *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989). To qualify as a capital murder, the killer's intent to rob must be formed before or at the time of the murder. *Dawkins v. State*, 495 S.W.3d 890, 895 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Harrison v. State*, No. 02-10-00432-CR, 2012 WL 1034918, at *4 (Tex. App.—Fort Worth Mar. 29, 2012, no pet.) (per curiam) (mem. op., not designated for publication). In contrast, as an example, if the killer committed the murder and then, as an afterthought, committed the robbery, the offense committed would not be capital murder. *See Dawkins*, 495 S.W.3d at 895.

But if there was evidence from which the jury could have rationally concluded beyond a reasonable doubt that the defendant formed the intent to obtain or maintain control of the victim's property either before or while committing the murder, then the State has proven that the murder occurred in the course of the robbery. *Harrison*, 2012 WL 1034918, at *4. The jury may infer the defendant's intent from his conduct. *Martinez v. State*, 633 S.W.3d 698, 705 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). The Texas Court of Criminal Appeals has held numerous times that this

---

[3]The jury charge included this definition.

6

aggravating element—murder in the course of another specified felony—is sufficiently proven if the State proves the robbery occurred immediately after the commission of the murder. *McGee*, 774 S.W.2d at 234 (citing five cases). A robbery occurring immediately after a murder supports the inference that the murder was intended to facilitate the robbery. *See Sancheszenteno v. State*, No. 05-21-00563-CR, 2023 WL 3735242, at *4 (Tex. App.—Dallas May 31, 2023, no pet.) (mem. op., not designated for publication).

With this understanding, we now turn to Rickard's interaction with Ms. D. at voir dire. The record shows that Rickard repeatedly misstated the law to require the murder to occur during the robbery:

> [Defense counsel:] The State has the burden to prove, beyond a reasonable doubt, that this -- that the murder occurred *during* the course of a robbery. That's a much less complicated concept, I think.
>
> *During* the course of the robbery. *Not right before the robbery, not right before a theft, not right after a robbery.* It's got to be *during* -- the State has the burden to prove, beyond a reasonable doubt, that this murder occurred *during* the course of the robbery, *not right before or right after.*
>
> [Prosecutor:] I want to object to the extent that "course of[,"] you can include a murder that happens right before you take the theft.[4]
>
> THE COURT: Overruled.[5]

---

[4]The prosecutor's objection is not the clearest. His objection appeared to be, "I want to object to the extent that he is limiting 'in the course of' to only mean 'during'; it can include a murder that happens right before the theft."

[5]After Rickard had moved on from Ms. D., the State renewed its objection, but on this later occasion, the State articulated its objection a little more clearly: "I would

[Defense counsel:] If -- that means that -- well, here is the question -- and I have it up there because, obviously, these long questions are hard to remember.

If you believe the State has proven that [Rickard] killed someone and then stole from them, committed theft, but you don't believe the State met its burden to prove that this happened in the course of committing a robbery or attempted robbery, what would your verdict be?

We'll start on this side. So, in other words, if you believe the State didn't meet its burden to show this happened *during* the course of a robbery or attempted robbery.

Ms. [D.]?

PROSPECTIVE JUROR: Okay. What now?

[Defense counsel:] Right. So I think I [confused] everybody with the intent stuff [we discussed earlier]. We got glazed over a little bit.

So, basically, the State has a burden -- one of its elements the State has the burden to prove is the State has the burden to prove, beyond a reasonable doubt, that the murder happened *during* the course of a robbery.

Any questions about that --

PROSPECTIVE JUROR: No.

[Defense counsel:] -- element?

Okay. So what this question is asking, if the State proves that a murder occurred but not that it was *during* the course of a robbery, what would your verdict have to be?

PROSPECTIVE JUROR: Guilty.

---

renew my objection on that. . . . I think he's confused the . . . panel. Because you can commit the robbery and commit the murder in the course of, or the law permits you to commit the murder and take the goods." On this second occasion, the trial court sustained the State's objection.

[Defense counsel:] Right.[6] So the State -- so in this case what the State has to prove, both murder and that it was *during* the course of a robbery. And they don't prove that it was *during* the course of a robbery. What does your verdict have to be?

PROSPECTIVE JUROR: So you're saying it happened after the robbery?

[Defense counsel:] I'm not -- I'm not saying about any facts. I'm saying pretend that you're sitting in the jury box --

PROSPECTIVE JUROR: Yes.

[Defense counsel:] -- and that you believe that the State proved that [Rickard] killed someone. And you also believed that he then stole from them, but you don't believe the State met its burden to prove that it happened *during* the course of a robbery or attempted robbery. What would your verdict be on the capital murder charge that is currently in this court?

PROSPECTIVE JUROR: Guilty.

[Defense counsel:] Okay. Thank you, Ms. [D.]  [Emphasis added.]

Rickard articulated his challenge for cause with the same misunderstanding of

the law:

[Defense counsel:] Yes, Your Honor.

I challenge [Ms. D.], juror Number 8. She said she would return a guilty verdict even if the State does not meet its burden to prove the fact that it was done *during* the course of a robbery.

THE COURT: [Prosecutor.]

[Prosecutor:] Your Honor, I think that was unclear. That was that confusion over the -- what the course in furtherance of. I think her indication was she would still find the person be guilty of murder, but I

---

[6]Based on defense counsel's analysis, "guilty" was not the right answer.

9

don't think he clarified that it was -- that it was clear it was a capital murder.

THE COURT: That challenge is denied. [Emphasis added.]

Rickard has not met his burden because he has not shown that Ms. D. understood the requirements of the law. *See Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009). How could she? Rickard did not correctly articulate the requirements of the law.

Additionally, as the prosecutor argued, Ms. D. might be understood to have taken the position that if Rickard had killed someone, then she would find him guilty of murder or, as she appeared to state, "capital murder," without understanding the distinction between the two.[7] If she was confused about the law's requirements—something that the record supports—Rickard did not meet his burden. *See id.*

---

[7]The very next venire person to whom Rickard spoke did precisely that but with far more clarity:

[Defense counsel:] Okay. Thank you, Ms. [D.]

Let me sort of jump back randomly. Ms. [J.] --

PROSPECTIVE JUROR: Uh-huh.

[Defense counsel:] -- same question.

PROSPECTIVE JUROR: I would agree. Guilty.

[Defense counsel:] Why do you say that?

PROSPECTIVE JUROR: Because -- simply because he murdered someone.

The trial court was in the best position to evaluate Ms. D.'s demeanor and responses; for this reason, we defer to its evaluations. *See Hudson*, 620 S.W.3d at 731. This is especially true when a venire member's answers are ambiguous, vacillating, unclear, or contradictory. *Lopez-Salas v. State*, No. 02-15-00294-CR, 2017 WL 1173831, at *1 (Tex. App.—Fort Worth Mar. 30, 2017, pet. ref'd) (citing *Gardner*, 306 S.W.3d at 295).

Accordingly, as to Ms. D., we hold that the trial court did not abuse its discretion by denying Rickard's challenge for cause.

---

. . . .

[Defense counsel:] . . . [T]hey have to prove that it happened during the course of a robbery or attempted robbery. So if they don't prove it happened during the course of a robbery or attempted robbery, what does your verdict have to be on a capital murder?

PROSPECTIVE JUROR: I guess it would be not guilty.

[Defense counsel:] Okay. You have trouble with that?

PROSPECTIVE JUROR: Yeah.

[Defense counsel:] And why do you have trouble with that?

PROSPECTIVE JUROR: Just because it -- it ended in murder.

[Defense counsel:] Right. Okay. So you have moral qualms with returning a not guilty verdict --

PROSPECTIVE JUROR: Uh-huh.

Unlike this voir dire exchange, the jury charge included an option for the lesser-included offense of murder.

11

**B. Mr. L.**

Rickard contends that Mr. L. could not follow the law because he stated that he would convict Rickard notwithstanding a reasonable doubt. We disagree. When Mr. L. spoke, what he meant was not clear. But what is clear is that he did not mean that he would convict Rickard even if the State had not proved its case beyond a reasonable doubt.

Initially, we note that when the prosecutor discussed the defendant's right to remain silent and the beyond-a-reasonable-doubt standard, Mr. L. did not voice any concerns. The prosecutor emphasized that he alone bore the burden of proof and that the burden was beyond a reasonable doubt:

> Now, in a case I have the burden of proof at all times. It never shifts to the defense. They don't have to prove anything. It's my burden. If I fail to meet my burden and they don't put on anything, the proper verdict is not guilty, because I have to prove each element beyond a reasonable doubt. They do not have a burden to prove anything.

We then turn to when Rickard conducted voir dire. To put Mr. L.'s comments in context, we first present the questions that Rickard posed to two other venire members—Mr. G. and Mr. A.—and their responses:

> [Defense counsel:] Mr. [G.], I want you to pretend for me that you are on the jury in this case and that I sat over here -- we sit on this side of the table. That I sat over here and I didn't ask a single question. I didn't give any opening statements. I didn't argue anything. In fact, just imagine I slept there. I just drooled on the table and slept the whole time.

But imagine that, at the end of the case, you still personally had a reasonable doubt as to one of the elements of the State's case. What would your verdict be?

PROSPECTIVE JUROR: Not guilty.

[Defense counsel:] Not guilty. And why is that?

PROSPECTIVE JUROR: They didn't prove all of the elements.

[Defense counsel:] All right. Thank you very much.

Ms. -- Mr. [A.], back to you. Same question. Let's pretend I slept over there, drooled all over the table. You were annoyed with me, thought I didn't do my job, but you still had a reasonable doubt. What would your verdict be?

PROSPECTIVE JUROR: Not guilty.

[Defense counsel:] Not guilty?

PROSPECTIVE JUROR: Uh-huh.

After Mr. G. and Mr. A. correctly answered the question, Rickard challenged the entire venire. It was to this challenge that Mr. L. responded:

[Defense counsel:] Okay. Who here has -- usually there's at least a few people who say, look, I have a real problem with that. If I don't hear from you at all, I can't return a not guilty verdict. If I don't hear from you at all -- me. You don't hear from me at all.

Any questions about that -- about that scenario? No?

Anybody have a problem with -- well, anybody have a general problem with that, me doing nothing?

[Mr. L.:] Why wouldn't you?

[Defense counsel:] Probably, right? You've got a problem with it. Now, but let's pretend it happened anyway --

PROSPECTIVE JUROR: Yeah.

13

[Defense counsel:] -- because, I don't know, maybe I'm just terrible. Let's pretend that -- hopefully pretend that for a second. *If you had a reasonable doubt at the end of the case, what would your verdict be?*

PROSPECTIVE JUROR: *It would be not guilty.* But that's how people get away because it has to be proven. *All the doubts have to be proven.*

[Defense counsel:] Okay. All right. Thank you very much. That was Mr. [L.], right? I don't think I had you. [Emphasis added.]

Thus, Mr. L.—like Mr. G. and Mr. A.—showed that he understood that the State's burden of proof was beyond a reasonable doubt. Like Mr. G. and Mr. A., Mr. L. understood that even in those instances when defense counsel did nothing, if the State failed to meet its burden, the verdict was not guilty.

Somewhat like Mr. G., Mr. L. added that not-guilty verdicts were explained by the State's failure to meet that burden. This too showed that Mr. L. understood how the burden worked and what the consequences were if the State failed to meet its burden.

Unlike Mr. G. and Mr. A., Mr. L. concluded, "All the doubts have to be proven." What Mr. L. meant by this last statement was not clear. Rickard did not ask any follow-up questions.

To the extent that Mr. L. meant that the State had to prove guilt beyond any doubt, that would support Rickard's argument. It would also be a non sequitur. No one was suggesting that the State's burden was beyond all doubt.[8]

When juxtaposed with the immediately preceding exchanges, Mr. L. might have been saying—although in a distorted way—"Beyond a reasonable doubt has to be proven by the State." Contextually, this construction would be consistent with everything that preceded his statement.

For our purposes, regardless of what Mr. L was attempting to articulate, the trial court—as the trier of fact—could have reasonably concluded that whatever Mr. L. intended to say, he was not saying that he would lower the State's burden to something less than beyond a reasonable doubt. We defer to the trial court's evaluations because it was in the best position to assess Mr. L.'s demeanor and responses. *See Hudson*, 620 S.W.3d at 731. When a venire member's answers are ambiguous, vacillating, unclear, or contradictory, we have all the more reason to defer to the trial court. *Lopez*, 2017 WL 1173831, at *1 (citing *Gardner*, 306 S.W.3d at 295).

Thus, as to Mr. L., we hold that the trial court did not abuse its discretion by denying Rickard's challenge for cause.

---

[8]During voir dire, the prosecutor discussed precisely this point: "Beyond a reasonable doubt is the standard in criminal cases, and that is the highest standard in the law. Now, it's not beyond all doubt or beyond a shadow of a doubt." Additionally, that construction would have favored Rickard and disfavored the State. The State, not Rickard, should have been the one to challenge Mr. L. for cause. The prosecutor did not move to strike Mr. L.

## V. CONCLUSION

We overrule Rickard's sole point and affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 30, 2023